UNITED STATES of America,
Appellee,

v.

Hyman WINTER, Appellant,

No. 504, Docket 29608.

United States Court of Appeals
Second Circuit.

Argued June 3, 1965.

Decided July 2, 1965.

Jerome C. Ditore, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty., for the Eastern Dist. of New York), for appellee.

Jerome Lewis, Brooklyn, N. Y. (Thomas R. Newman, Brooklyn, N. Y., of counsel), for appellant.

Before MOORE and ANDERSON, Circuit Judges, and WEINFELD, District Judge.*

WEINFELD, District Judge:

Hyman Winter appeals from a judgment of conviction entered upon the verdict of a jury which found him guilty of perjuring himself while testifying under oath before a Federal grand jury.[1] He was sentenced to ninety days imprisonment and placed on probation for a period of twenty-one months. He seeks reversal of the conviction and dismissal of the indictment on the grounds that: (1) his testimony before the grand jury, having been compelled under a subpoena when he was a subject of inquiry, was obtained in violation of his constitutional rights to counsel and against self-incrimination; (2) even if the Government's conduct in summoning him before the grand jury did not invade his constitutional rights, it was so unfair as to warrant invocation of this Court's supervisory power over the administration of criminal justice; and (3) the

question which he was convicted of answering falsely was not material to the grand jury inquiry and hence furnished no basis for a perjury prosecution.

The appellant was a construction supervisor in the service of the Federal Housing Administration. In December 1962 a grand jury in the Eastern District began an extensive investigation into bribery, graft, extortion and other corrupt practices allegedly involving FHA employees and local builders. During the course of the inquiry approximately 100 witnesses, most of them builders and FHA personnel, had been called before the grand jury. Fifty of the builders testified they knew appellant and all but six denied they had ever given him money. These six witnesses granted that payments were made by them to Winter, although some said these were not to influence his official action, but were more in the nature of gratuities. It was after these witnesses had testified that appellant was subpoenaed.

Winter first appeared before the Assistant United States Attorney in charge of the inquiry, who informed him that he was a subject of the grand jury investigation, advised him of his right against self-incrimination, and presented him with a "waiver of immunity" which he acknowledged he understood and agreed to execute. When the Assistant asked whether he had accepted bribes from builders, Winter vehemently denied he had ever taken "a crooked penny in my life." He then went before the grand jury, as Winter himself testified, "to answer questions about myself and about bribes." The foreman advised him that he was the "subject of an investigation" into his "conduct" as an employee of the FHA and that:

"I wish to further advise you that you are a prospective defendant, and

---

* Sitting by designation.

1. 18 U.S.C. § 1621 provides: "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that

he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury * * *."

that anything that you might say before the Grand Jury could be used against you at a later proceeding or proceedings. * * * You need not testify as to those matters which may tend to incriminate you, that is to say, you cannot be compelled to testify against yourself, as provided in the Fifth Amendment to the United States Constitution. * * * That is not to say, however, that you cannot testify before the Federal Grand Jury if you desire to do so. * * * Nor is it to say that you can refuse to testify as to matters that would incriminate others than yourself. * * * But, as I have already stated to you, if the matters you would testify to would tend to incriminate yourself as well as others, you can refuse to testify and can assert your rights under the Fifth Amendment."

Indicating that he understood the foregoing advice and the nature of a "waiver of immunity" which he was again asked to execute, he signed the "waiver."

Appellant then testified, at no time asserting his privilege against self-incrimination. He was shown a list of the fifty builders who had testified they knew him, which included the six who swore they had given him money at various times. He was asked whether he knew what a "gratuity" was and responded it was "some sort of tip or gift * * * anything that has value," including money and liquor. He denied that he had ever accepted gratuities from anyone on the list or from any other builder. He also denied he had received money from a builder for the purpose of influencing his official decisions or actions. He was then questioned as to whether any builder on the list "did dislike you or have any grievance against you to the extent that he would bear false witness against you," or "would testify falsely against you or against any other Federal employee." He responded that, except for one Richard Wallen, who had previously complained to Winter's superiors about "shakedowns," no builder had such a motive and none had ever threatened to "fix him." Winter specifically denied receiving a case of twenty-five year old Scotch whisky or $100 per week from any builder, or borrowing from or lending to anyone in the industry. He asserted ignorance of any arrangement whereby FHA inspectors allegedly extorted a set fee for each stage of the inspection process.

Finally, he was asked the question which formed the basis for the fifth count, the only one submitted to the jury [2]—"Is it your testimony, then, that you have never taken money at any time from any builder for any reason whatsoever?" Winter replied, "That is correct, sir."

Six weeks after Winter's testimony and nearly seven months after commencement of the inquiry, the grand jury returned bribery indictments against nine or ten FHA employees, including Winter, and perjury indictments against Winter and Richard Wallen, the builder who had once accused Winter, but then sought to retract the charge.[3] With respect to Winter the Government chose to proceed to trial on the perjury indictment, obtaining the conviction which forms the basis of this appeal.

### I

It is beyond question that appellant was fully and adequately advised of his right against self-incrimination. But the record does not indicate that he was advised, either by the Assistant United States Attorney or by the grand jury, of a right to counsel. Appellant contends that inasmuch as he was already a "pro-

---

2. Counts 2, 3 and 4 were dismissed as duplicitous at the end of the Government's case and count 1 was dismissed at the end of the entire case.

3. Wallen, who later testified at the trial against Winter, pleaded guilty to perjury in 1964.

spective"or "de facto" defendant [4] when he was subpoenaed to appear before the grand jury, his testimony was procured not only in violation of his Sixth Amendment right to counsel, but also in violation of his Fifth Amendment right against self-incrimination, notwithstanding that he was fully advised of the latter. Testimony so elicited, the argument runs, cannot be used as a predicate for a perjury indictment, even if the witness uttered perjurious statements.

■ Short shrift may be made of appellant's claim that the self-incrimination clause of the Fifth Amendment prohibits the Government from ever summoning before a grand jury one who has become a target of inquiry and is a "potential" defendant. Whatever may be the rule in the State of New York,[5] the Fifth Amendment does not proscribe the practice here inveighed against. Repeatedly this Court has so ruled,[6] declining to equate the position of a "potential" defendant called before a grand jury with that of one already on trial. Whether or not recent constitutional developments have drawn into question particular language or authorities cited in these decisions [7] their basic force remains unimpaired.

To suggest that once an individual is named by witnesses before a grand jury under circumstances which may lead to his indictment he thereby automatically gains immunity from subpoena would denude that ancient body [8] of a substantial right of inquiry. This grand jury was engaged in a broad investigation of

4. Counsel for appellant uses the terms interchangeably, although "de facto" implies that the return of an indictment is but a mere formality, while "potential" suggests that the decision to prosecute has not yet been made. In any event, little turns on the choice of words.

5. See People v. Laino, 10 N.Y.2d 161, 218 N.Y.S.2d 647 (1961), where it was held the State cannot indict "a target of a grand jury investigation" for past crimes revealed during testimony given in response to a grand jury subpoena. See also, People v. Steuding, 6 N.Y.2d 214, 217, 189 N.Y.S.2d 166, 167, 160 N.E.2d 468 (1959) ("it is solely the Constitution of New York with which we are now concerned"); People v. De Feo, 308 N.Y. 595, 127 N.E.2d 592 (1955); People v. Ferola, 215 N.Y. 285, 109 N.E. 500 (1915) (coroner's inquest). Closest to the present case is People v. Gillette, 126 App. Div. 665, 111 N.Y.S. 133 (1st Dep't 1908), where two of five judges, in an alternative holding, concluded that a potential defendant could not commit perjury before a grand jury which had subpoenaed him "inasmuch as the oath could not be legally administered to him."

6. E.g., United States v. Pappadio, 346 F. 2d 5 (2d Cir. 1965); United States v. Cleary, 265 F.2d 459 (2d Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed. 2d 1548 (1959); United States v. Garnes, 258 F.2d 530, 534 (2d Cir. 1958), cert. denied, 359 U.S. 937, 79 S.Ct. 651, 3 L.Ed. 2d 637 (1959); United States v. Klein, 247 F.2d 908, 920–21 (2d Cir. 1957), cert. denied, 355 U.S. 924, 78 S.Ct. 365,

2 L.Ed.2d 354 (1958); United States v. Scully, 225 F.2d 113 (2d Cir.), cert. denied, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955); United States v. Benjamin, 120 F.2d 521 (2d Cir. 1941). See United States v. Grunewald, 233 F.2d 556, 568–71 (2d Cir. 1956), rev'd on other grounds, 353 U.S. 391, 415–24, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (the Halperin counts). Cf. Malloy v. Hogan, 378 U.S. 1, 11–14, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (by implication). Contra, Piemonte v. United States, 367 U.S. 556, 565–66, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961) (dissenting opinion).

7. See, e.g., the statement in United States v. Cleary, 265 F.2d at 461, that "Neither federal agents nor prosecutors are broadly proscribed from questioning an accused in noncoercive situations" and its accompanying citation of United States v. Wilson, 264 F.2d 104 (2d Cir. 1959), in light of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

8. Sometimes referred to as "a law enforcement agency," United States v. Cleary, 265 F.2d at 461, and elsewhere as an "arm of the Court," Levine v. United States, 362 U.S. 610, 617, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960). See also, Brown v. United States, 359 U.S. 41, 49, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959); Cobbledick v. United States, 309 U.S. 323, 327, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Blair v. United States, 250 U.S. 273, 279–283, 39 S.Ct. 468, 63 L.Ed. 979 (1919); Hale v. Henkel States, 250 U.S. 273, 279–83, 39 S.Ct. L.Ed. 652 (1906); In re Black, 47 F.2d 542, 544 (2d Cir. 1931).

alleged bribery and corruption of FHA officials. It had the right, and indeed the duty, to follow leads wherever they pointed, to determine whether bribery and other illegal practices had been engaged in and, if so, what builders and officials were involved and how far up the official ladder the alleged wrongdoing extended. It had a legitimate interest in summoning Winter before it. Moreover, it was not bound to accept at face value the testimony of the six builders and other previous witnesses, and the evidence indicates that when Winter was subpoenaed it had not yet decided to indict. As the foreman testified, the jurors wanted to "Let him [Winter] answer and find out whether it was true or not." Winter well might have persuaded the grand jury of his truthfulness or that the testimony of the six builders furnished an inadequate basis upon which to return a True Bill. On the other hand, denying the grand jury the right to call Winter would not have prevented his indictment and could only have hampered the inquiry into wrongdoing, if any, of others. The grand jury was entitled to his testimony subject, of course, to his right not to incriminate himself.[9]

■ In short, and leaving aside the questions whether a "potential" defendant must be advised of his status and of his right not to incriminate himself, questions not presented on the facts of this case,[10] appellant's right under the self-incrimination clause of the Fifth Amendment was not violated when he was summoned to appear before the grand jury.

■ No more successful is appellant's Sixth Amendment claim, which arises out of the omission of the Assistant United States Attorney to advise him of his "right" to consult with counsel before entering the grand jury room. In reaching this conclusion, we do not pass upon the applicability to grand jury proceedings of Escobedo v. Illinois,[11] nor do we decide whether, in the circumstances of this case, Winter had become an "accused" in the Escobedo sense. We hold, instead, that even if appellant were entitled, as a matter of constitutional right, to be advised that he could consult with counsel prior to testifying before the grand jury, omission so to advise him is no defense to a charge that he thereafter perjured himself in the grand jury room. For this position we find both reason and authority.

It is one thing to say that testimony compelled from a grand jury witness who has been denied his right to counsel may not be used to secure his indictment or conviction either for the crimes being investigated or for those revealed during the course of his testimony. Exclusion of such testimony does not preclude reindictment and prosecution on the basis of untainted evidence, thus affording an opportunity to vindicate the public interest.[12] It is an entirely different proposition, however, to say that such a witness

9. See Hale v. Henkel, 201 U.S. 43, 69–70, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

10. Compare United States v. Lawn, 115 F. Supp. 674 (S.D.N.Y.), appeal dismissed sub nom. United States v. Roth, 208 F.2d 467 (1953) (witness, already the subject of an information, subpoenaed and not advised of right not to testify); United States v. Edgerton, 80 Fed. 374 (D.Mont. 1897) (witness not advised that it was his conduct the grand jury was investigating). See also United States v. Hoffa, 156 F.Supp. 495, 514 (S.D.N.Y.1957).

11. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In this connection see Enker & Elsen, "Counsel for the Suspect: Massiah v. United States and Escobedo v. Illinois," 49 Minn.L.Rev. 47, 73–76 (1964). Some of the differences between stationhouse interrogation and the taking of grand jury testimony are set out in In re Groban, 352 U.S. 330, 337–48, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957) (dissenting opinion).

12. This possibility of reindictment and prosecution was noted and relied upon by the New York Court of Appeals in People v. Laino, 10 N.Y.2d 161, 173, 218 N.Y.S. 2d 647, 657 (1961). Indeed, the successful appellant in People v. Steuding, 6 N. Y.2d 214, 189 N.Y.S.2d 166 (1959), was reindicted and convicted, see People v. Laino, supra, 10 N.Y.2d at 173, 218 N. Y.S.2d at 657.

may with absolute impunity proceed to perjure himself in the hope of avoiding the return of a True Bill. Such a rule would degrade the oath and have the effect of conferring permament immunity on the perjurer.

There are decisions in point. The Court of Appeals for the Fifth and Seventh Circuits [13] have held that a "prospective" defendant not informed of his right against self-incrimination could nevertheless be prosecuted for false testimony thereafter given a grand jury. And this Court, in United States v. Remington,[14] held that one who commits perjury upon the trial of an indictment subsequently invalidated because of grand jury misconduct, nevertheless is subject to prosecution. The Court said:

> "Here we have. a separate crime of perjury committed after the illegal conduct by the government as opposed to the above cases [Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), and Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426 (1920) ] where we had only a rule of evidence developed to prevent the government from making use of its illegally procured knowledge. It seems to us an unwarranted extension of that doctrine to apply it here to a new wrong committed by the defendant. Moreover, to call the perjury a fruit of the government's conduct here, is to assume that a defendant will perjure himself in his defense. * * * If this assumption is a premise of the defendant's argument, we cannot accept it for it in-

volves a disregard of the defendant's oath and an assumption that perjury, although a crime, is an inevitable occurrence in judicial proceedings. * * * [S]upervisory rules * * * do not permit the defendant to commit a new and independent crime. We do not preserve justice by allowing further criminal activity to take place."

In Remington the Court relied upon the Supreme Court's decision in United States v. Williams,[15] upholding a conviction for perjury committed during the course of a trial on an indictment later determined to state no Federal offense. The Supreme Court rejected the view that the invalidity of the indictment rendered the trial court incompetent to administer a binding oath or deprived it of "jurisdiction." It took the position, as we do here, that a prior error on the part of the Government was no defense to a charge under a "federal statute enacted in an effort to keep the course of justice free from the pollution of perjury." [16]

United States v. Haas [17] presented somewhat similar issues when defendants were called before a grand jury engaged in investigating income tax violations and conspiracy. As a result of their grand jury testimony under subpoena they were indicted for perjury. The writer of this opinion stated:

> "There, Haas, although subpoenaed as a witness, was clearly a prospective defendant by reason of past acts. Here, his prosection could result only from a perjurious statement not in existence at the time he had been subpoenaed before the Grand Jury. He could only become

---

13. United States v. Orta, 253 F.2d 312 (5th Cir.), cert. denied, 357 U.S. 905, 78 S.Ct. 1149, 2 L.Ed.2d 1156 (1958); United States v. Parker, 244 F.2d 943 (7th Cir.), cert. denied, 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed.2d 48 (1957).

14. 208 F.2d 567 (2d Cir. 1953), cert. denied, 347 U.S. 913, 74 S.Ct. 476, 98 L.Ed. 1069 (1954).

15. 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1951). Cf. Ogden v. United States, 303 F.2d 724, 731 (9th Cir. 1962) (18 U.S.C. § 1001), cert. denied, 376 U.S. 973, 84 S. Ct. 1137 12 L.Ed.2d 86 (1964).

16. 341 U.S. at 68, 71 S.Ct. at 600.

17. 126 F.Supp. 817, 818 (S.D.N.Y.1954), where, however, the defendants, although not advised of their right against self-incrimination, did have the benefit of counsel.

a defendant by reason of his conduct before the Grand Jury."

The cases cited by appellant are inapposite, since they were based on testimony elicited by tribunals without jurisdiction to conduct the inquiry in issue [18] or involved deliberate efforts to entrap witnesses into committing perjury.[19] Here, as in Williams and Remington, the grand jury was a competent body to inquire into bribery and corruption of Federal officials and to administer an oath, and was not used to entrap. In summary, we hold that failure to inform a "potential" defendant of a right to counsel, assuming such a right exists, does not establish a defense to a charge that he thereafter gave false testimony while under oath in response to a material question directed to him by a competent tribunal.

## II

Appellant next contends that in the circumstances here presented it was unfair for the Government to have subpoenaed him as a grand jury witness. The essence of his argument is that since the grand jury already had evidence of payments to Winter, service of the subpoena impaled him on the horns of a trilemma: (1) to admit receipt of the payments, thereby incriminating himself, or (2) to assert his privilege against self-incrimination, thereby prejudicing his cause before the grand jury, or (3) to deny the payments, thereby running the risk of a perjury charge. Finally, he urges that, having placed him in this position, it was unfair for the prosecutor not to warn him of the prior grand jury testimony and not to advise him that a continued denial of the testimony would invite a perjury charge. As to this latter contention, there is no duty upon the prosecution to inform a witness, even a potential defendant, of the testimony of other witnesses before the grand jury— indeed it would appear that the Federal rules prohibit such disclosure.[20] An oath to tell the truth as one knows it is not conditioned upon what others may have testified. "[P]erjury is as highly a personalized crime as exists upon the statute books. The response of [one] sworn to give true testimony is personal in every sense of the word."[21] It is the belief of the individual in the verity of his sworn testimony that is crucial.[22] And neither was there any duty upon the prosecutor to caution a witness to testify truthfully. Once a witness swears to give truthful answers, there is no requirement to "warn him not to commit perjury or, conversely to direct him to tell the truth."[23] It would render the sanctity of the oath quite meaningless to require admonition to adhere to it. In any event, while there was no legal duty to warn him against committing perjury, Winter was put on notice that previous witnesses had given testimony involving him. The questions whether he knew of any builder who bore him ill will or who had a motive to give false testimony against him clearly indicated that previous wit-

---

18. See, e.g., Brown v. United States, 245 F.2d 549 (8th Cir. 1957) (alternative holding), where a Nebraska grand jury questioned defendant with respect to crimes allegedly committed in another jurisdiction, and United States v. Icardi, 140 F.Supp. 383 (D.D.C.1956) (alternative holding), where a Congressional committee was held to have exceeded any legitimate legislative purpose. But see United States v. Neff, 212 F.2d 297, 302 (3d Cir. 1954) (ignoring lack of venue).

19. Compare Brown v. United States, supra, and United States v. Thayer, 214 F.Supp. 929 (D.Colo.1963), with LaRocca v. United States, 337 F.2d 39, 42–43 (8th Cir. 1964).

20. Fed.R.Crim.P. 6(e). See Hale v. Henkel, 201 U.S. 43, 59, 26 S.Ct. 370, 50 L. Ed. 652 (1906).

21. United States v. Charnay, 211 F.Supp. 904, 906 (S.D.N.Y.1962).

22. 18 U.S.C. § 1621: "Whoever, having taken an oath before a competent tribunal, * * * that he will testify * * * truly, * * * willfully and contrary to such oath states * * * any material matter which he does not believe to be true, is guilty of perjury * * *."

23. United States v. Haas, 126 F.Supp. 817, 818 (S.D.N.Y.1954), and cases there cited.

nesses had not given him a clean bill of health. And finally he conceded that before entering the grand jury room he was warned, "Whatever you do, don't lie." As far as the Hobson's choice which he claims was forced upon him by his appearance before the grand jury, the short answer is that if the truth were incriminatory, it was his right to refuse to reveal it. Instead, having chosen to tell his story which the grand jury rejected and a petit jury found false, he cannot now complain of his failure to assert his privilege. As to the contention that had he availed himself of the privilege it would have prejudiced his cause before the grand jury just as much as if he admitted wrongdoing, this is overbalanced by the grand jury's legitimate interest in pursuing its broad investigation. This is not a case where the inquiry was directed to a single defendant "for the sole and dominating purpose of preparing an already pending indictment for trial." [24] Moreover, without conceding the validity of his view that the assertion of his constitutional right would have prejudiced him before the grand jury, the fact is that had he done so and notwithstanding been indicted for bribery, the assertion of the right could not have been used against him upon the trial.[25] There is no basis for the charge that the prosecution engaged in any conduct which contributed to his testifying falsely.

### III

 Appellant's final contention is that his testimony was not material because as a matter of fact it could not impede the course of the grand jury's investigation, that body having made its decision to indict regardless of his testimony. To state appellant's position is to refute it. Not only do the facts not support his claim, for the evidence indicates that the grand jury had kept an open mind pending his appearance, but he misconstrues the nature of the legal test. Materiality turns not on the open-mindedness of the inquiring body, but on the testimony's potential—viewed as a matter of law to be decided by the trial court [26]—for affecting the course of inquiry. In light of the broad sweep of this grand jury's investigation into alleged bribery and corruption involving builders and officials, his testimony was clearly material.

The conviction is affirmed.

---

24. United States v. Dardi, 330 F.2d 316, 336 (2d Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964).

25. United States v. Grunewald, 353 U.S. 391, 418–24, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957).

26. United States v. Marchisio, 344 F.2d 653, 665 (2d Cir. 1965).