**UNITED STATES of America**

v.

**Antonio CORALLO, Henry Fried, S. T. Grand, Inc., et al., Defendants.**

**No. 67 Cr. 1051.**

United States District Court
S. D. New York.
March 13, 1968.

Robert M. Morgenthau, U. S. Atty., for United States, Michael S. Fawer, Robert G. Morvillo, Elkan Abramowitz, Asst. U. S. Atty., of counsel.

Barry Ivan Slotnick, New York City, for defendant Corallo, Jacob Kossman, Philadelphia, Pa., of counsel.

Zoloto, Karger & Zurkow, New York City, for defendants Fried and S. T. Grand, Inc., Arthur Karger, Alfred Donati, Jr., New York City, of counsel.

On Motion to Transfer

WYATT, District Judge.

This is a motion for defendant Antonio Corallo for an order transferring the proceeding as to him to another district. The motion is based on Rule 21(a) of the Federal Rules of Criminal Procedure which provides for such a transfer if the Court is satisfied that in this district there is "so great a prejudice against the defendant that he cannot obtain a fair and impartial trial" here. It is not suggested by Corallo to what district the case should be transferred, provided it is outside New York and Connecticut.

A similar motion to transfer has been made by defendants Fried and S. T. Grand, Inc., who suggest that the case be transferred to the Eastern District of Pennsylvania at Philadelphia. A similar motion to transfer has been made by defendant Motto who does not suggest to what district the case should be transferred, provided it is outside New York, Connecticut, and New Jersey.

The arguments and averments made by each defendant moving to transfer have been considered in connection with each motion.

■■ It should be noted that defendants Itkin, Marcus, and Rappaport have not made motions to transfer and the case cannot be transferred as to them. This is not only because of the language of Rule 21(a) requiring that the transfer be "upon motion of the defendant" and that the transfer be "as to him"; it is also because of the Sixth Amendment right of a defendant to a trial in the district "wherein the crime shall have been committed". Thus, if a motion to transfer be granted as to some defendants here, it may well be that at least two duplicating trials will be required. While this is no reason to deny a transfer if movants can receive a fair trial only in some other district, it is a factor to be kept in mind in reaching a decision on that point.

The movants have submitted numerous examples of the extensive newspaper publicity which followed the indictment and arrests of the defendants; it is stipulated that radio and television stations carried substantially the same news. It is beyond dispute that the publicity was on a very large scale. It would serve no useful purpose to describe what was published but some of it was plainly unfavorable to defendants, for example, the reference to a defendant as a "Mafia leader", the reference to another defendant as a "wartime racketeer", and the suggestions that the underworld was attempting to infiltrate the municipal government. Whatever the effect of this news coverage, there was no purpose to make difficult a fair jury trial for defendants. While the United States Attorney and an official of the Federal Bureau of Investigation appear to have made statements to the press, they did not stimulate or increase the publicity. The nature of the charges and the identity of the defendants would in any event have excited wide public interest, to which the news media responded naturally. It is assumed that the same factors will insure a continuing amount of publicity.

I am by no means satisfied, however, that the movants could not today obtain a fair and impartial trial in this Court House. Exposure to the most prejudicial type of publicity does not necessarily result in prejudiced jurors. The jury panels drawn in this Court have been, in my experience, remarkably free of bias and prejudice. This is a metropolitan community, sophisticated in the sense that excitement and bizarre events are daily staples. The population is dense, with the supply of jurors virtually inexhaustible. The people of the District are of all types and backgrounds but they nevertheless live together in a high degree of harmony, occasional evidence to the contrary notwithstanding. They take seriously their responsibilities as jurors.

■ But the question is not whether today the movants could obtain a fair and impartial trial here in this City. No trial date has yet been fixed. It is too soon to decide whether the trial should be here or in some other District.

When the date for trial is reached, then the movants can ask for a transfer if they feel *at that time* that they cannot obtain here a fair and impartial trial. It is far better for the trial judge to decide such a motion in the light of the then situation than now to embark on the inconvenient and expensive course which a transfer would require. The trial judge can also take into account the cautionary controls available to him, such as those suggested (pp. 138–147) in "Standards Relating to Fair Trial and Free Press", a report of the American Bar Association Project on Minimum Standards for Criminal Justice.

If these motions to transfer are renewed at the opening of trial, the judge then presiding can choose whether to decide them before or after the voir dire examination of the jury panel to select a jury. It is noted that the report just cited recommends (pp. 119, 126, 127) that if the motion is *made* before the jury is selected it should be *decided* be-

fore the jury is selected; in other words, the ability to pick a jury which seems to meet minimum standards of impartiality should not prevent a transfer if "news coverage has raised substantial doubts about the effectiveness of the voir dire standing alone" (p. 127). It will be time enough, however, to deal with these matters at the opening of trial.

The motion for defendant Corallo for an order transferring the proceeding as to him to another district is denied, without prejudice to its renewal at the opening of trial.

So ordered.

### On Motion to Dismiss

This is a motion for defendant Corallo to dismiss the indictment; the motion is authorized by Rule 12(b) (1) of the Federal Rules of Criminal Procedure.

For the reasons given herein, the motion must be, and is, denied.

Defendants Fried and S. T. Grand, Inc. have also moved separately to dismiss the indictment for some of the reasons here advanced for movant Corallo. The arguments for dismissal made for Fried and S. T. Grand, Inc. have been considered in connection with this motion for Corallo.

The indictment was returned by a grand jury on December 18, 1967. It charges in one count that Corallo and others conspired to violate Section 1952 of Title 18 of the United States Code. There is a citation in the indictment to the conspiracy statute (18 U.S.C. § 371).

Section 1952 was enacted by Congress in 1961 as part of a program, submitted by then Attorney General Robert F. Kennedy, to combat organized crime. Section 1952 makes it an offense to travel in interstate or foreign commerce or to use any facility in that commerce with the intent of furthering an unlawful activity and if there is in fact a furthering of the unlawful activity or an attempt so so do. The definition of "unlawful activity" includes bribery in violation of state law.

The indictment charges that Corallo and others conspired together and that it was a part of this conspiracy that they would travel in interstate commerce and would use the telephone in interstate commerce with the object of bribing an official of the City of New York to award a municipal contract to one of the conspirators, the bribe moneys to be distributed to the city official and to others of the defendants.

■■ It is first urged that Section 1952 is unconstitutional because it invades the powers reserved to the States by the Tenth Amendment. The argument is that the section is in aid of state law enforcement and is thus within the reserved police powers of the States. The argument is unsound because the section as here applied deals *only* with interstate commerce, over which Congress has undoubted power derived from the Constitution (Art. I, § 8). That Congress may adopt means to regulate interstate commerce even though such means "may have the quality of police regulations" (227 U.S. at 323, 33 S.Ct. at 284) is affirmed in decisions such as Champion v. Ames (the "lottery case"), 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492 (1903) and Hoke v. United States (a "white slave" case), 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523 (1913). In the one case Congress forbade the movement of lottery tickets in interstate commerce, in the other the movement of women and girls for immoral purposes. In each case, Congress acted to discourage behavior of which it disapproved but over which, within the states, it had no power. In each case, the decision was that the power of Congress over interstate commerce was properly exercised. It is difficult to see any distinction between the lottery case, the white slave case and the case at bar. In Section 1952, Congress has forbidden the use of interstate commerce to aid bribery and other activities illegal under state law; that Congress would have no authority over such activities within the states is of no moment.

Cases cited for movant such as Linder v. United States, 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819 (1925) are not in point.

*Linder* dealt with the indictment of a physician for violation of what is now 26 U.S.C. § 4705(a), part of the revenue laws as to narcotic drugs. This law made it an offense to "sell, barter, exchange, or give away" narcotics except under a written order on an official form. It was held to be no violation of the cited law for a physician in good faith to give an addict "moderate amounts of drugs for self-administration in order to relieve conditions incident to addiction" (268 U. S. at 22, 45 S.Ct. at 450). The Court found that the law should not be interpreted as forbidding such conduct and that if it did forbid such conduct "it would certainly encounter grave constitutional difficulties" (268 U.S. at 22, 45 S.Ct. at 450), this because "direct control of medical practice in the states is beyond the power of the federal government" (268 U.S. at 18, 45 S.Ct. at 449). It should be noted that the practice of medicine is a lawful activity.

Nor is United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233 (1935) in point. There Congress imposed an additional tax of $1000 per year on all those in the liquor business in violation of state law; the normal tax was from $25 to $100 depending on the type of liquor business. It was held that the purpose of Congress was not to tax but to impose "a penalty for the violation of State law" and that this was "a clear invasion of the police power, inherent in the states, reserved from the grant of powers to the federal government by the Constitution" (296 U.S. at 294, 295–96, 56 S.Ct. at 227). In the case at bar, however, it cannot be said that in enacting Section 1952 Congress was not regulating interstate commerce in the same way as in the lottery and white slave cases. Moreover, the authority of *Constantine* is seriously weakened by the fact that Brandeis, Stone and Cardozo, JJ. were in dissent, insisting that for Congress to classify an illegal business for tax purposes in a different way than a legal business is not to punish "for a crime against another [a state] government" (296 U.S. at 298, 56 S.Ct. at 228).

■ It is contended that Section 1952 violates constitutional rights to travel, to speak, etc. The answer is that the statute interferes only with travel and speech in aid of *unlawful* activities and not at all with travel and speech for legitimate purposes. Movant is in error in claiming that the statute forbids travel merely because a person may have a particular intent; there is no violation of Section 1952 unless an act is performed, or attempted to be performed, in aid of an unlawful activity.

The other arguments directed to the constitutionality of Section 1952 have been considered and found without merit.

The conclusion that Section 1952 violates no constitutional provisions is in accord with a number of reported decisions. Among these are United States v. Barrow, 363 F.2d 62 (3d Cir. 1966), cert. denied 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967); United States v. Zizzo, 338 F.2d 577 (7th Cir. 1964), cert. denied 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965); Turf Center, Inc. v. United States, 325 F.2d 793 (9th Cir. 1963); Bass v. United States, 324 F.2d 168 (8th Cir. 1963). No decision has been cited, and none has been found, to the contrary.

■ Other arguments are made for dismissal on the ground that the indictment fails to charge an offense.

Among other things, the principle is invoked that the giver and the receiver of a bribe cannot be prosecuted for a conspiracy because the crime of bribery requires the participation of two parties. See United States v. Zeuli, 137 F.2d 845 (2d Cir. 1943). But this indictment does not charge a conspiracy to commit bribery but rather a conspiracy to violate Section 1952 in that, as part of the conspiracy, the alleged conspirators would travel and would use a facility of interstate commerce in furtherance of the bribe. There is an essential element of the offense here charged which would not be required in a charge of conspiracy to bribe, namely, the travel in interstate commerce or the use of a facility in inter-

state commerce to aid the unlawful activity.

The principle invoked for movant could not in any event be applicable to the indictment at bar.

The "unlawful activity" charged as the object of the conspiracy is the violation of Sections 372, 378 and 1826 of the New York Penal Law, McKinney's Consol. Laws, c. 40, as in effect prior to September 1, 1967.

Section 372 of the Penal Law ("officer accepting bribe") made it an offense for a "public officer" to ask or to receive anything to influence any official act or duty.

Section 378 of the Penal Law ("Bribing certain public officers") made it an offense for any person to offer or to give anything to any "public officer" to influence his official act or duty.

Section 1826 of the Penal Law ("Taking unlawful fees") made it an offense for any "public officer" to ask or to receive anything, other than as authorized by law, for any official act or duty.

It is doubtful if the cooperation of two persons is necessary for a violation of the cited Sections. For present purposes, however, it will be assumed that there must in each instance be a giver and a taker.

The conspiracy averred in this indictment included many persons who were to be neither givers nor takers. The only "public officer" among the alleged conspirators was Marcus, a city official; he could be the only taker of moneys in violation of Sections 372 and 1826 and could not himself violate Section 378 which applied only to the giver. The only givers alleged among the conspirators were to be Fried and S. T. Grand, Inc. But the conspiracy is alleged to have included persons who were neither givers nor takers: Itkin, Motto, Rappaport and the movant Corallo; their parts are not specified in detail but it is clear that they were to unite their efforts to accomplish the unlawful object. This is a classic charge of conspiracy, in no way affected by any cases cited to show it as defective.

Because the conspiracy included persons whose participation was not essential to the offense of bribery, the principle of such cases as United States v. Sager, 49 F.2d 725, 727–729 (2d Cir. 1931) does not apply. "The principle is * * * limited to cases where the essential participants are the only conspirators. When those whose co-operation is necessary for the commission of the substantive crime conspire with another person to commit the offense, all are guilty of conspiracy." 1 Wharton's Criminal Law and Procedure (1957 ed.) 193.

As an example very similar to the case at bar, some thieves sold stolen merchandise with the services of a go-between, who received a commission. The thieves, the buyer and the go-between were indicted for conspiracy. The same argument was made as here, based on the Zeuli decision (above cited). Our Court of Appeals described Zeuli as having held that "neither the buyer of stolen goods nor the thief may be convicted of conspiring with each other to receive them". The Court then distinguished this situation from a stolen goods conspiracy which included a go-between. The Court said: "While the crime of receiving and possessing stolen goods necessarily involves the cooperation of the thief and the buyer, it does not necessarily involve the cooperation of the buyer and a go between * * *. That distinguishes United States v. Zeuli, supra, from this case." United States v. Smolin, 182 F.2d 782, 786 (2d Cir. 1950).

As another example, perhaps even closer to the case at bar, see the discussion by Judge Cooper in United States v. Cogan, 266 F.Supp. 374, 377–378 (S.D.N.Y.1967). There is also a good discussion by Judge Dobie in Old Monastery Co. v. United States, 147 F.2d 905, 907–908 (4th Cir.), cert. denied 326 U.S. 734, 66 S.Ct. 44, 90 L.Ed. 437 (1945). See also United States v. Holte, 236 U.S. 140, 35 S.Ct. 271, 59 L.Ed. 504 (1915);

Reno v. United States, 317 F.2d 499, 503–504 (5th Cir. 1963).

That Corallo and other defendants may have been called as witnesses before the grand jury is no reason for dismissing the indictment against him or them. United States v. Winter, 348 F.2d 204, 207–208 (2d Cir.), cert. denied 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965).

The motion of defendant Corallo to dismiss the indictment is denied.

So ordered.

### On Motion to Suppress

This is a motion for defendants Fried and S. T. Grand, Inc. for an order suppressing for use as evidence the grand jury testimony of Fried and dismissing the indictment as against these defendants. Presumably the motion is believed authorized by Fed.R.Crim.P. 12(b) (1) and 41(e).

The ground for the motion is that, according to Fried, he was summoned to appear before the grand jury and did appear at about 10:30 A.M. on Monday, December 18, 1967; that after he left the grand jury room he was followed by government agents and was arrested at about 1:30 P.M. on the same day.

I have read the testimony of Fried before the grand jury. He was advised of the alleged violations which were being investigated, that he was a "possible subject of this investigation", and that the grand jury was investigating "an alleged bribery of which you may be a part". He was told of his privilege against self-incrimination. He was told that he had a right to consult counsel and in this connection Fried stated that his attorney was then sitting just outside the grand jury room. It is appropriate to this extent to invade the required secrecy of grand jury proceedings in order to give the background against which the present motion is made.

The indictment was handed up on December 18, 1967, and a bench warrant was issued for the arrest of Fried. The return of the warrant was filed De-

cember 26, 1967, and shows that it was received and executed on December 18, 1967. Whether the officer executing the warrant had it in his possession at the time of the arrest is of no moment. Fed. R.Crim.P. 9(c) (1) and 4(c) (3).

The argument for the present motion is that Fried and his corporation were "de facto defendants" (Moving memorandum, p. 4) when he was questioned before the grand jury. In this connection, counsel for movants refer to the return of the indictment shortly after Fried testified; it is asserted that the return was a "mere formality" (Moving memorandum, p. 4). It is suggested that the grand jury "might" have voted an indictment even before Fried was questioned.

There is a strong presumption in favor of the regularity of grand jury proceedings and the suggestion cannot be accepted that this indictment was voted before the testimony of Fried but was not returned until after his testimony.

The argument for movants invokes Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) to require that a witness before a grand jury, who is himself the subject of investigation, must be allowed to have counsel present with him before the grand jury. Since counsel was not present with Fried in the grand jury room, his constitutional rights were violated, and the indictment must be dismissed. This Court declines so to extend Miranda v. Arizona.

Preliminarily it may be noted that the motion is made on behalf of the corporation, S. T. Grand, Inc., of which Fried is president. It is difficult to see how the corporation has any standing to move to suppress because constitutional rights of Fried were violated. A corporation in any event has no privilege against self-incrimination under the Fifth Amendment (United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944)) and since the chief, if not only, function of counsel in

the grand jury room would be to advise as to incriminating questions, no rights of the corporation to counsel could possibly have been affected here.

▮ Preliminarily also, Fried himself has no standing to make the present motion because he never asked to have counsel present with him in the grand jury room. He was told that he had a right to consult counsel. He had a lawyer sitting just outside. He is not within the principle of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) nor of Miranda v. State of Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). The application of *Escobedo* depends on whether "the suspect *has requested* and been denied an opportunity to consult with his lawyer" (378 U.S. at 491, 84 S. Ct. at 1765; emphasis supplied). The statement in *Miranda* is that "the Fifth Amendment privilege comprehends * * * a right * * * to have counsel present during any questioning *if the defendant so desires*" (384 U.S. at 470, 86 S.Ct. at 1626). Fried never "requested" that his counsel come into the grand jury room nor indicated in any way that he so desired.

Even if Fried had requested that his counsel be permitted to come into the room, the result would be the same. Rule 6(d) of the Federal Rules of Criminal Procedure specifies the persons authorized to be present while the grand jury is in session; an attorney for "the witness under examination" is not among those specified. Traditionally, witnesses before grand juries have not been permitted to have their attorneys inside the grand jury room and there is impressive authority that this violates no constitutional rights of the witness. "A witness before a grand jury cannot insist, as a matter of constitutional right, on being represented by his counsel * * *". In re Groban, 352 U.S. 330, 333, 77 S.Ct. 510, 513, 1 L.Ed.2d 376 (1957). Counsel for movants point out that this was a five to four decision (Reply memorandum, p. 8) but, as to the principle that there is no right to the presence of counsel in the grand jury room, there was no difference between the majority and dissenters, as shown by the dissenting opinion of Mr. Justice Black (see discussion, 352 U.S. 346–347, 77 S.Ct. 510, 1 L.Ed.2d 376). The present argument for movants was carefully considered and rejected by Judge Weinfeld in United States v. Kane, 243 F. Supp. 746, 753–754 (S.D.N.Y.1965). See also Directory Services, Inc. v. United States, 353 F.2d 299, 301 (8th Cir. 1965).

The motion of defendants Fried and S. T. Grand, Inc., to dismiss the indictment is denied.

So ordered.