UNITED STATES of America, Appellant,

v.

Estelle JACOBS a/k/a "Mrs. Kramer," Defendant-Appellee.

No. 443, Docket 75–1319.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1975.

Decided Feb. 24, 1976.

88

Edward C. Weiner, Special Atty., U. S. Dept. of Justice (David G. Trager, U. S. Atty., E. D. N. Y., of counsel), for appellant.

Irving P. Seidman, New York City (Rubin, Seidman & Dochter, New York City, of counsel), for defendant-appellee.

Before FEINBERG, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

GURFEIN, Circuit Judge:

The United States appeals from an order of the United States District Court for the Eastern District of New York (Hon. Edward R. Neaher, *Judge*), granting a motion to suppress the Grand Jury testimony of defendant-appellee Estelle Jacobs and dismissing Count Two of the indictment against her.[1] The defendant had moved for an evidentiary hearing and an order to dismiss the indictment on the ground, *inter alia,* that she was a subject of the investigation but had not been informed that she was a subject when she was subpoenaed to testify before the Grand Jury. Judge Neaher granted the motion to dismiss Count Two of the indictment which charged the making of false statements before the Grand Jury in violation of 18 U.S.C. § 1623, but denied the motion to dismiss Count One. The government appeals the dismissal of Count Two pursuant to 18 U.S.C. § 3731.

The facts are not in dispute with regard to the procedure followed. The defendant is a housewife who was employed at various times in a collection agency. During March 1973 Harry W. Stonesifer, Jr. ("Harry"), using the name of his brother, William D. Stonesifer ("William"), incurred a gambling debt of $5,060 on a junket to Puerto Rico. During May 1973 defendant serviced this collection account for her employer. She made several telephone calls in that connection, and on May 22, 1973 she allegedly made a telephone call to William, recorded on tape by him, which contained a threat to injure the person of Harry. William notified the Federal Bureau of Investigation ("FBI"). On September 13, 1973 the defendant was interviewed by the FBI who advised her of her *Miranda* rights, including the right to remain silent and the right to appointed counsel. She signed an "Advice of Rights" form. The agents questioned her about the Stonesifer account and the fact that she had used the name "Mrs. Kramer" in making telephone calls on the Stonesifer account. She denied that she had harassed William on the telephone. She was not told that her conversation had been recorded.

On June 10, 1974, about nine months later, she was called before the Grand Jury by a subpoena issued by the Organized Crime Strike Force.[2] She appeared without counsel at that first session; she was

---

1. The indictment, filed on November 11, 1974, contains two counts: Count One charged a violation of 18 U.S.C. § 875(c)—transmitting in interstate commerce a threat to kidnap or injure another. Count Two was the perjury count which was dismissed and which is the subject of this appeal.

2. The Strike Force attorneys operate under a commission from the Attorney General pursuant to 28 U.S.C. § 515(a) and under guidelines promulgated by the Attorney General. See Office of the Attorney General, Order No. 431–70, Establishing Guidelines Governing Interrelationships Between Strike Forces and United States Attorneys' Offices, reprinted in *In re*

warned by the Strike Force Attorney that under the Fifth Amendment she could "refuse to answer any question that you feel might tend to incriminate you." She was also told that under the Sixth Amendment she had a right to counsel of her choice who could be outside the Grand Jury room to assist her "about the procedures on any specific questions." Asked whether she felt the need of an attorney, she responded, "I do not." She was also informed that perjury is a "very serious offense." Appellee was asked to affirm or deny her conversations with William which had been recorded, though the fact of recording was not disclosed to her. Her denials were the basis for Count Two of the indictment.

The Strike Force attorney at her first appearance before the Grand Jury had in his possession the recording of her conversation with William, and, as Judge Neaher found, "[t]he government admits that when she was called to testify before the grand jury the defendant was not just another witness, but was in fact a 'putative defendant,' in that the government had incriminating evidence against her." Nevertheless she was not warned at the time of her first appearance that she was a subject of the investigation or that she had an absolute right to remain silent.

The District Court concluded that, under the circumstances, the defendant was entitled to "full" *Miranda* warnings including the advice that she had an absolute right to remain silent. It noted that "simply with the possession of the wiretap tape, the government undoubtedly felt it had all but the identity evidence for probable cause to be found by the grand jury that Jacobs violated 18 U.S.C. § 875(c)." He also noted that the Grand Jury had been presented with "sufficient independent identity evi-

dence." The court ruled, accordingly, that "[u]nder the circumstances, asking her if she made the statements the government already had recorded, without fair warning of the trap she was being led into is not permissible prosecutorial conduct," since "the questions which led to the alleged perjurious responses served *no other function* than to give the government an additional prop on which to base its case against defendant" (emphasis in original).

Judge Neaher relied on *United States v. Mandujano*, 496 F.2d 1050 (5 Cir. 1974), *cert. granted*, 420 U.S. 989, 95 S.Ct. 1422, 43 L.Ed.2d 669 (1975). He concluded, as had the Fifth Circuit, that the prosecutorial conduct involved was "so 'offensive to the common and fundamental ideas of fairness' as to amount to a denial of due process." 496 F.2d at 1059.[3] His decision to dismiss the false statement count was predicated on the "due process" clause of the Fifth Amendment rather than on its "self-incrimination" provision.

We do not reach either the claimed "self-incrimination" violation or the claimed "due process" violation under the Fifth Amendment. We have held that a prospective defendant may be questioned before a Grand Jury about statements he made in a recording in the possession of the government, without being told of the existence of the recording. *United States v. Del Toro*, 513 F.2d 656, 664 (2 Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). But we noted that the defendants had been advised not only of their constitutional rights but also that each "was a target of the investigation." 513 F.2d at 660.[4] That was not done here.

It appeared to us that prosecutors in this circuit generally had been following Section 3.6(d) of the ABA Project on Standards for

---

*Persico*, 522 F.2d 41, 68 (2 Cir. 1975) (appendix).

3. In *Mandujano*, as here, a Special Attorney was involved. As the court noted, "[s]omewhere within this chain of command and information" between him and the United States Attorney a decision was made to subpoena Mandujano as a witness. 496 F.2d at 1058 n. 8.

4. So, too, in *United States v. Winter*, 348 F.2d 204, 205 (2 Cir.), *cert. denied*, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965), also a perjury prosecution, the defendant was advised that he was "a prospective defendant," and we left aside the question whether a potential defendant *must* be advised of his status since that question was not presented on the facts of the case. 348 F.2d at 208.

Criminal Justice, Standards Relating to the Prosecution Function (Approved Draft 1971).[5] Section 3.6(d) provides:

"If the prosecutor believes that a witness is a potential defendant he should not seek to compel his testimony before the grand jury without informing him that he may be charged and that he should seek independent legal advice concerning his rights."

See *United States v. Washington*, 328 A.2d 98, 100 (D.C.App.1974).

We did not wish simply to assume, however, that all prosecutors in the circuit now adhere to this standard. We accordingly directed the clerk of our court to make written inquiry of the United States Attorneys for each district in the circuit concerning their practice in this regard.

The United States Attorneys have replied with unanimity that where a person called before the Grand Jury is known to be a potential defendant he is warned that he is a "target of the investigation" or a "subject of the investigation." More particularly, the United States Attorney for the Eastern District of New York, where the Grand Jury which heard this defendant sat, replied that "our practice is to advise the potential defendant . . . that he is a target of the investigation."

We thus have a situation in the Eastern District where if Estelle Jacobs had appeared before the Grand Jury on a subpoena issued by the United States Attorney she would have been warned that she was a target, while the Strike Force operating in the same district failed to give her such warning.

■ In this posture of conflicting conceptions of prosecutorial fairness in the same district, we need not consider whether there is a constitutional due process claim as the court below held. Uniform justice is not achieved in the face of such disparity which, if not in actual violation of the Constitution, is, at least, outside the penumbra of fair play. In *In re Persico*, 522 F.2d 41 (2 Cir. 1975), we upheld the right of Strike Force attorneys to appear before the Grand Jury partly because they were under the supervision of the United States Attorneys. We are sorry to learn that this may not always be the fact. We suggest that Strike Force Attorneys should be instructed on and should adhere to the practices of the United States Attorney.[6]

In the interest of uniformity in criminal procedure within the circuit, which is a fundamental of the administration of criminal justice, we affirm the dismissal of Count Two pursuant to our supervisory function.

We do not mean to imply that a potential defendant has a constitutional right not to

**5.** See, *e. g., United States v. Bonacorsa*, 528 F.2d 1218, 1223 (2 Cir. 1976); *United States v. Del Toro, supra*, 513 F.2d at 660; *United States v. Corallo*, 413 F.2d 1306, 1328, 1329 n. 6 (2 Cir.), *cert. denied*, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969); *United States v. Irwin*, 354 F.2d 192, 199 (2 Cir. 1965), *cert. denied*, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966); *United States v. Winter, supra*, 348 F.2d at 205; cf. *United States v. Scully*, 225 F.2d 113, 116 (2 Cir.), *cert. denied*, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955).

**6.** Reviewing the guidelines set out in Appendix A to the *Persico* opinion, *supra*, we note that there appears to be an omission with regard to the matter here at issue. It is provided, *inter alia*, that "[t]he Chief of the Strike Force and the United States Attorney . . . shall have the responsibility of keeping each other fully advised of all organized criminal matters in progress." 522 F.2d at 68. "Fully" is per-

haps too ambiguous and requires clarification. It is also provided:

"When a specific investigation has progressed to the point where there is to be a presentation for an indictment, the Chief of the Strike Force shall then for this purpose operate under the direction of the United States Attorney who shall oversee the judicial phase of the development of the case."

*Id.* at 69. What is lacking is a statement that when the investigation has progressed to the point where witnesses are called to testify before the Grand Jury, the Strike Force shall operate under the direction of the United States Attorney. We think this should have been assumed by the Strike Force since, under the guidelines, even preliminaries, such as arrest warrants and search warrants are, where practicable, to be sought with the concurrence of the United States Attorney. *Id.*

be called before the Grand Jury at all. See *United States v. Dionisio*, 410 U.S. 1, 10 n. 8, 93 S.Ct. 764, 769, 35 L.Ed.2d 67, 77 (1973); *United States v. Doe*, 457 F.2d 895, 898 (2 Cir. 1972), *cert. denied*, 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608 (1973); *United States v. Winter*, 348 F.2d 204, 207–08 (2 Cir.), *cert. denied*, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965). Nor do we deal with perjury committed by a prospective defendant after adequate warning of his status. We are satisfied that we should affirm in this case solely under our supervisory power.[7]

7. Since the suppression of the Grand Jury testimony wipes out the entire predicate for the perjury count in this case, Judge Neaher properly dismissed Count Two of the indictment before trial.