**UNITED STATES of America,
Plaintiff,**

v.

**Kenneth BERNARD, Defendant.**

**Crim. No. 74–83131.**

United States District Court,
E. D. Michigan, S. D.

April 12, 1976.

John L. Newcomer, Sp. Atty., Detroit Strike Force, U. S. Dept. of Justice, Robert Ozer, Atty. in Charge, Detroit, Mich., for plaintiff.

Bruce T. Leitman, Leitman & Roeser, Bloomfield Hills, Mich., for defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

The defendant is charged in an indictment dated December 3, 1974, with three counts of perjury in violation of 18 U.S.C. § 1623. The first two counts relate to testimony that the defendant gave at a Special Grand Jury session on September 27, 1972. The third count relates to testimony that the defendant gave at a Special Grand Jury session on May 10, 1973. The defendant has moved to suppress his testimony at both of these sessions on the grounds that he was not properly advised of his rights at either of the sessions. Following argument, the motion was taken under advisement.

Both parties agree that at the times the defendant was called before the Special Grand Jury, the government was attempting to determine whether one Anthony Giacalone had performed legitimate services in exchange for a percentage of a fee earned by Integrated Medical Services (IMS) for each teamster who participated in a hospitalization plan which was the subject of a contract between IMS and the International Brotherhood of Teamsters. The defendant testified that he was the president of IMS between July of 1971 and June of 1972; that he was attempting to get the Teamsters to contract with IMS; that Anthony Giacalone provided him with an introduction to a Mr. Green, who was an actuary for an insurance underwriter; that through this introduction IMS was eventually able to enter into a contract with the Teamsters; and that in consideration for his help, IMS entered into a contract with Anthony Giacalone which provided that he would receive up to 40% of what IMS made from its contract with the Teamsters.

In Count One the indictment charges that the defendant committed perjury in his testimony as it related to Mr. Green. The government alleges that there is no Mr. Green. In Count Two the indictment charges that the defendant committed perjury when he testified that he was not involved with paying Anthony Giacalone. The government asserts that the defendant signed a number of IMS checks to the order of Anthony Giacalone. In Count Three the indictment charges that the defendant committed perjury when he testified that the contract between IMS and Anthony Giacalone was drawn up by attorney Leonard Hyman's office. The government asserts that the defendant drew up the contract.

The Sixth Circuit has held that a grand jury witness who is in the position of a "virtual defendant" must be advised of his or her right against self-incrimination before he or she is required to testify. *United States v. Luxenberg*, 374 F.2d 241 (CA6 1967); *Stanley v. United States*, 245 F.2d 427 (CA6 1957). In neither of these cases did the court elaborate in any detail on the standard for determining whether a grand jury witness is a "virtual defendant", nor did the court indicate whether an objective or a subjective standard should be used.

The Fifth Circuit in *United States v. Mandujano*, 496 F.2d 1050 (CA5 1974), cert. granted, 420 U.S. 989, 95 S.Ct. 1422, 43 L.Ed.2d 669 (1975), held that a witness is a "virtual defendant" if at the time he or she is called before the grand jury the government's investigation has passed beyond the stage of a general inquiry and has focused upon the witness as a target of the investigation. This Court adopts this definition of "virtual defendant".

In *United States v. Fruchtman*, 282 F.Supp. 534 (N.D.Ohio 1968), the court noted that:

"The word 'virtually' connotes an objective test. Thus, the logical result is reached that a man's rights do not depend on the subjective intent of the prosecutor nor upon the prosecutor's knowledge as to what acts, if committed, might constitute an offense under the law. This Court is of the opinion that the question should be examined in terms of what the record and the transcript show and not on the more subjective facts contained in the Government's affidavit." Id., 282 F.Supp. at 536.

This Court agrees that an objective test should be used.

The government asserts that Anthony Giacalone was the prime target of the investigation. This is apparent from a reading of the grand jury transcripts. But an investigation can have more than one target. The fact that the government was primarily interested in Anthony Giacalone does not mean that the defendant was not a secondary target and thus a "virtual defendant". *United States v. Chevoor*, 392 F.Supp. 436, 440 (D.Mass.1975).

■ The government acknowledges that it had reason to believe that Anthony Giacalone's contract with IMS was not a legitimate business transaction but rather was a sophisticated kickback scheme. Certainly there would be reason to believe that the person at IMS with whom Anthony Giacalone dealt was involved in the scheme. The defendant was that person.. The government attorney's own statement to the grand jury prior to the initial questioning of the defendant clearly establishes that the defendant was a "virtual defendant":

"We expect to present evidence to you, in the near future which will revolve about the transactions involving an enterprise called I.M.S., which stands for Intergrated (sic) Medical Services and its contract with the Michigan Conference of Teamsters and the contract between I.M.S. and one Anthony Gacalone (phonetic spelling). There are indications and possibilities, that numerous federal statutes have been violated, which we will hopefully present to you in the future, evidence that he received a percentage of the sums paid by the Teamsters to I.M.S. and he did nothing for them. We expect to produce evidence, that Veto Gacalone, the brother, was the payee on a settlement check, settling the contract between I.M.S. and Anthony Gacalone, when in fact, Veto Gacalone, has been in Michigan State Prison for the past two to three years. I think the possibilities exist, that travel and—I think we'll demonstrate for you, through witnesses, that travel occurred through Chicago and Miami in furtherance of this scheme and that the anti racketeering statutes in the United States Code may have been violated, precisely Section 1952 of Title 18. We believe, that the evidence may permit you to find that violations of Section 1954 of Title 18 have been violated that relates to union welfare pension plans and I think it's likely or possible, that the evidence will permit you to find, that mail fraud or fraud-by-wire, or both, have been committed in this instance and I think the possibility exists, that the evidence will demonstrate to you, that conspiracy to violate the four that I've mentioned, the four statutes and conspiracy Title 26, which relates to income tax and any number of statutes." Grand Jury Transcript of Testimony of Kenneth Bernard of September 27, 1972, pp. 1–2.

The defendant was involved in the travel referred to above and was as previously mentioned the person at IMS with whom Anthony Giacalone dealt. No objective reading of this transcript would allow this Court to find that only one of two parties to a transaction that the government believed to be illegal was a target of the investigation. This Court finds that the defendant was a "virtual defendant" at both of his appearances before the grand jury.

The remaining questions concern whether the defendant was given proper warnings, and if he was not, what the appropriate remedy should be. Because

of this Court's determination as to the appropriate remedy, it is unnecessary to determine whether the warnings that were given to the defendant were proper.

Two circuits have held that even if a witness is entitled to warnings and no warnings are given, such an omission is not grounds for suppression of testimony at a subsequent perjury trial. As was stated by the Second Circuit in *United States v. Winter*, 348 F.2d 204 (CA2 1965):

> "We hold, instead, that even if appellant were entitled, as a matter of constitutional right, to be advised that he could consult with counsel prior to testifying before the grand jury, omission so to advise him is no defense to a charge that he thereafter perjured himself in the grand jury room. For this position we find both reason and authority.
>
> "It is one thing to say that testimony compelled from a grand jury witness who has been denied his right to counsel may not be used to secure his indictment or conviction either for the crimes being investigated or for those revealed during the course of his testimony. Exclusion of such testimony does not preclude reindictment and prosecution on the basis of untainted evidence, thus affording an opportunity to vindicate the public interest. It is an entirely different proposition, however, to say that such a witness may with absolute impunity proceed to perjure himself in the hope of avoiding the return of a True Bill. Such a rule would degrade the oath and have the effect of conferring permanent immunity on the perjurer."

Id., at 208–209.

The Tenth Circuit is in accord with this view. *Cargill v. United States*, 381 F.2d 849, 853 (CA10 1967).

The defendant relies upon *United States v. Mandujano,* supra. In *Mandujano* the government through information provided by an undercover agent knew the answers to the questions it was asking and further knew that affirmative answers would amount to a confession of guilt of trafficking in heroin. The court found that in effect the government was entrapping the defendant into committing perjury. On these facts the court held that a failure to properly warn a "virtual defendant" was grounds for suppressing the defendant's statements at a subsequent perjury trial. Any other result would have left the court with no effective remedy for what it felt was improper government conduct.[1]

Although there is language in *Mandujano* that supports the defendant's contention that it is proper to suppress statements any time a "virtual defendant" is not given proper warnings and is subsequently charged with perjury, the thrust of the opinion relates to what the court viewed as the prosecutorial misconduct of setting up a witness for a perjury charge. The court, after acknowledging that the Fifth Amendment protection against self-incrimination only extends to past acts and not to those that are or may be committed in the future, pointed out that:

> "Once again, we must point to the distinguishing characteristics in the facts and the *proceedings* in this case. The entire proceedings here which led up to Mandujano's indictment for perjury were, as we have noted repeatedly, beyond the *pale of permissible prosecutorial conduct*. We conclude that the entire proceeding was a violation of Mandujano's due process rights under the Fifth Amendment." Supra, 496 F.2d at 1058. (Emphasis in original.)

---

1. The circuits are not in agreement as to whether this type of prosecutorial conduct is improper. See *United States v. Nickels*, 502 F.2d 1173, 1176–1177 (CA7 1974). Since there is no evidence in the instant case that the government knew the answers to its questions at the time they were asked, it is unnecessary for this Court to determine the propriety of such conduct.

**308**

A recent Ninth Circuit case and two recent district court cases that have relied upon *Mandujano* both involved the government questioning a witness about his or her criminal activity where the government already knew the answers to the questions and failed to properly warn the defendant. *United States v. Rose Wong* (CA9 No. 74–1636, 9/23/74); *United States v. Jarrett*, 393 F.Supp. 874 (S.D.Miss.1975); *United States v. Chevoor,* supra.[2]

In the instant case there is no evidence that the government was setting up the defendant for a perjury charge by asking questions for which it already had answers. The defendant does not allege that at the time the defendant testified the government had evidence that there was no Mr. Green. The defendant in his brief asserted that at the time he testified the government had evidence that he has signed IMS checks that were made payable to Anthony Giacalone. At the hearing on the motion the government denied this, and defense counsel accepted this denial. The statements made by the defendant that form the basis of Count Three were unsolicited. Grand Jury Transcript of Testimony of Kenneth Bernard of May 10, 1973, p. 28. Thus, there was present here none of the prosecutorial conduct that the Fifth Circuit focused on in *Mandujano*.

■ This Court holds that at least where there is no evidence that the government in calling a witness before a grand jury knows the answers to the questions propounded and that truthful responses will amount to an admission of criminal conduct, a defendant is not entitled to have his or her grand jury testimony suppressed at a subsequent perjury trial even if he or she was a "virtual defendant" and was not given proper warnings at the grand jury proceedings.

The motion to suppress will be denied.

**2.** *United States v. Jacobs*, 531 F.2d 87, 18 Cr.L. 2562 (CA2 1976), also involved a situation in which the government knew the answers to the questions posed. The court held that a potential defendant should be warned of the fact that he or she is a target and granted a motion to dismiss a perjury indictment where such a warning had not been given. The court based its decision on its supervisory power.