**UNITED STATES of America,**
**Plaintiff-Appellant.**

**v.**

**Paul Gonzales RANGEL, Defendant-**
**Appellee.**

**No. 73–3356.**

United States Court of Appeals,
Fifth Circuit.

June 28, 1974.

Rehearing and Rehearing En Banc
Denied Oct. 16, 1974.

William Sessions, U. S. Atty., John Pinckney, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellant.

Stewart J. Alexander, San Antonio, Tex. (Court-appointed), for defendant-appellee.

Before TUTTLE, COLEMAN and AINSWORTH, Circuit Judges.

TUTTLE, Circuit Judge:

This is a companion case to United States v. Mandujano, 5th Cir.; 496 F.2d 1050. The cases were combined for decision by the trial court on a motion to suppress grand jury testimony.

On May 2, 1973, appellee Rangel appeared as a witness before the DALE (Drug Abuse Law Enforcement) Grand Jury, pursuant to a subpoena. The following warnings were given Rangel:

"Now anytime I ask you a question and you feel the answer would tend to incriminate you, you have a right to refuse to answer that question, but you can't refuse to answer a question if it is not—if the answer would not tend to incriminate you. In other words, you would be in contempt of court. Do you understand what I mean by incriminate you?"

Rangel was further advised that he could have an attorney outside the grand jury room; however, he was not told that he had a right to have appointed counsel outside the grand jury room, that what he said could be used against him in later proceedings, and that he had a right to remain silent.[1]

A federal narcotics agent had reported that in December, 1972, he attempted to purchase three ounces of heroin from Rangl, and that discussions about money for the drugs took place although no money ever changed hands. The government attorney who questioned Rangel before the grand jury testified on the motion to suppress that he had discussed the circumstances of this attempted buy with the agent in preparation for Rangel's appearance before the grand jury. The evidence taken on the motion to suppress showed that the government attorney requested suggestions for witnesses to be subpoenaed before the grand jury from the agent who had dealt with Rangel and the agent recommended calling Rangel and recited to the government attorney how the actual attempt had occurred.

Rangel was asked the following questions, *inter alia*, by the government attorney before the grand jury:

"Q: Have you ever offered to sell heroin, get heroin for someone?

A: No, sir.

Q: Let me ask you specifically have you at any time within the last four months, five months, since December 1st last year, the month Christmas was in, have you since then at any time sold heroin to anyone—

A: No, sir, I haven't.

Q: For money? Have you offered to sell heroin to anyone during that period?

A: (Nod negative).

Q: Have you talked with anyone since December 1, 1972, about getting them some heroin—

A: No, sir.

Q: Or selling some heroin?

A: (Nod negative).

Q: I want to make this clear to you. I think—in fact I know I told you at the outset that we will ask you certain questions and if you make a statement, you are

A: No, sir . . . I didn't.

Q: You have the right to an attorney if you want one. He can't be in here with you. The rules wouldn't permit it, but he could be outside and you could talk to him anytime you want to."

At no time was Rangel informed that an attorney would be furnished him free of charge if he were financially unable to employ one.

---

1. The following conversation transpired between the government attorney and Rangel:
"Q: You are not under arrest.
A: I know, sir.
Q: You know that. As far as I know there are no warrants out for your arrest. You have a right to an attorney if you want one. Do you have an attorney?
A: He didn't tell me anything. They just gave me the subpoena.
Q: No, I say did you talk to an attorney after you got the paper, the subpoena? .

under oath and Mr. Tarbutton, the foreman of the grand jury, who asked you to raise your right hand tell the truth, the whole truth and nothing but the truth—We have asked you questions and if you have lied to us, in other words if you have made a false answer, false statement in response to some of these questions I have asked you, particularly those I have just asked you about heroin, having heroin, selling heroin or trying to get heroin to sell for somebody, if you made a false statement and we prove it is false, you have committed a felony, a federal felony. Do you understand that?

A: Yes, sir, I do.

Q: With that in mind do you still make the same answer to the questions I have just asked you about the sale?

A: Yes, sir . . ."

A member of the grand jury then inquired:

"Q: Let's go back just a little bit there, Mr. Rangel, back in December, four months ago, five months ago, December of 1972—

A: Yes, sir.

Q: Before Christmas a couple of weeks. Did you at any time offer to obtain some heroin for someone that came to see you?

A: No, sir.

Q: Your nickname is Payo?

A: Yes, sir.

Q: Are you sure about that?

A: Yes, sir."

The agent in charge of Rangel's case testified that the file on Rangel was closed following the prosecution and conviction of his brother David Rangel, which took place between December, 1972, and the grand jury appearance in May, 1973.

The appellee was subsequently indicted in count 1 under 21 U.S.C.A. § 846 for an attempt to distribute three ounces of heroin on or about December, 1972, and in count 2 under 18 U.S.C.A. § 1623 for making false representations. The perjury count was based on Rangel's denial before the grand jury of any attempt to obtain or sell heroin or any solicitation to do so.

The appellee moved for an order suppressing his testimony before the grand jury on the perjury count. The district court granted appellee's motion to suppress his testimony before the grand jury, finding that the appellee was a virtual or putative defendant, and thus was in custody under the *Miranda* decision,[2] and therefore should have been given all *Miranda* warnings. United States v. Rangel, 365 F.Supp. 155 (W.D.Tex. 1973). The district court determined that the warnings given were inadequate and that the appellee could not be deemed to have voluntarily waived his Fifth Amendment right to remain silent. The government ultimately dismissed the attempt count against Rangel.

### I. "PUTATIVE OR VIRTUAL" DEFENDANT

As noted in United States v. Mandujano, *supra* at n. 3, the district court issued a joint opinion in this case and the *Mandujano* case because it found that the two cases embodied a virtually identical set of circumstances. The remarks and findings of fact by the district court quoted extensively in the *Mandujano* opinion apply with equal force to the circumstances of appellee Rangel's interrogation. As in *Mandujano*, we construe the discussion by the trial court to be a finding that the government had focused upon Rangel as someone whom the government had knowledge of having committed a crime, as a person whom the government had planned to indict as it had one eye on prosecution, and against whom it was gathering incriminating evidence. Also, the district court found that when Rangel was brought into the

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965).

grand jury room, the government then knew that an affirmative answer to questions put to him would amount to a confession of guilt of trafficking in heroin.

■ Consequently, for the reasons stated in our *Mandujano* decision, we agree with the finding by the district court that this appellee was a virtual or putative defendant, was in custody under the *Miranda* decision, and therefore should have been given all *Miranda* warnings.

## II. REMEDY FOR FAILURE TO GIVE MIRANDA WARNINGS

The question whether the usual remedy for failure to give constitutional warnings, i. e., suppression of the testimony, can ever be employed in a situation where the testimony itself amounts to perjury was thoroughly considered in United States v. Mandujano, *supra.* There, we held that

".  .  . where a totally unfair procedure is put in train—as when there is a factual determination that a person, who is subpoenaed before the grand jury and questioned about an alleged crime, was already known to the satisfaction of the prosecuting agency prior to the grand jury appearance to be guilty of that precise crime—, elemental fairness requires that such person is under such compulsion as to require that he be given the *Miranda* warnings, and that failure to do so must require suppression of any incriminating testimony given by him even though he is being prosecuted for giving false testimony." *Mandujano, supra* at 1058.

The proceedings here were even more unfair than those in *Mandujano* because, not only are all the ingredients of Mandujano's predicament present, but also the warning actually given Rangel contained an implicit threat which all but negated the warning of the privileges against self-incrimination. As accurately construed by the district court:

"As to defendant Rangel, the statement of the right to remain silent was so garbled as to be highly suspect, .  .  .

"Besides the convolution of the double negative in the foregoing language, that warning, as administered to defendant Rangel, contains an implicit threat which all but negates the warning of the right to remain silent. The special attorney .  .  . did not suggest to Rangel that he *could* be held in contempt, if he wrongly refused to answer. Instead he told the defendant that he *would* be held in contempt, if he made the wrong guess as to the incriminating nature of an answer. The explanation by the special attorney thus carried a strong implication that any doubt as to the incriminating nature of a response should be resolved by the defendant in favor of answering, instead of in favor of silence. Judgments about the actual incriminating nature of a statement present great difficulties even for attorneys well versed in the law, so, as a general rule, they advise clients to opt for silence whenever any doubt exists. It is certainly unrealistic, as well as unfair, to require a putative defendant, who is not learned in the law, to choose between 'incriminating' and 'non-incriminating' answers, especially in the somewhat imposing environment of the grand jury room, unless he has been fully, completely, and unambiguously advised of his right to remain silent, and voluntarily waives that right." United States v. Rangel, 365 F.Supp. at 159 (W.D.Tex.1973).

In fact, the statement was somewhat more threatening to Rangel than noted by the district court. The warning given by the prosecuting attorney was ".  .  . if the answer would not tend to incriminate you .  .  . you *would be in contempt of court.*" (Emphasis supplied). This, of course, is not true. In such an event Rangel would be subject to being cited for contempt unless, after the court found this privilege improperly asserted, he thereafter refused to answer.

We conclude that under the facts as determined by this trial court, the procedure by which Rangel, already believed by the government agent to be guilty, and later indicted for the offense, was subpoenaed to testify as to the dealings which were the basis of his indictment without *Miranda* type warnings was a violation of Rangel's Fifth Amendment right to due process and that the trial court's order suppressing the grand jury testimony must be affirmed.