**UNITED STATES of America,
Plaintiff,**

v.

**Harvey B. JARRETT, Defendant.**

**Crim. A. No. 73S-20(R).**

United States District Court,
S. D. Mississippi, S. D.

May 14, 1975.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., for plaintiff.

Boyce Holeman, Gulfport, Miss., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DAN M. RUSSELL, Jr., Chief Judge.

Defendant, Harvey B. Jarrett, a resident of Jackson, Mississippi, has filed a motion to suppress certain of his testimony given on February 1, 1973 before a grand jury meeting in Biloxi, Mississippi. The motion has been heard, orally argued and briefed, and is ready for disposition.

Jarrett is presently under a two count indictment in the above styled and numbered action—the first count charging

the defendant with having made false statements before the grand jury in violation of Title 18, U.S.C., Section 1623, and the second count charging defendant with obstructing justice by having given false statements in violation of Title 18, U.S.C., Section 1503.

In the indictment it is stated that the grand jury was conducting an investigation to determine whether there had been committed in the Southern District of Mississippi violations of the laws of the United States prohibiting income tax evasion, mail fraud, interstate travel and transportation in aid of racketeering enterprises, false statements, and other federally prohibited criminal acts. It is also stated therein that it was material to the investigation to determine whether the defendant, in connection with his employment as sales manager with Allied Equipment, Inc., a Jackson corporation, had ever promised, offered or given monies, goods, chattels, right in action or other property, real or personal, to duly elected county supervisors of the State of Mississippi, or participated in so doing. The questions and defendant's answers thereto before the grand jury are set out verbatim in each of the two counts.

This indictment was brought in on April 5, 1973, by the same grand jury who had heard defendant's testimony slightly more than two months before.

On August 12, 1974, in Criminal Action No. J74–58(R), another indictment was returned against Jarrett and others charging in five counts a conspiracy to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service in the audit, ascertainment, computation, assessment and collection of revenue in violation of Internal Revenue laws. This indictment was superseded on November 12, 1974 in Criminal Action No. J74–69(N), which has been consolidated with No. J74–58(R).

In his motion to suppress, defendant asserts that his testimony of February 1, 1973, was obtained illegally in that he was not advised of his rights under the Fifth Amendment to the United States Constitution (the right to remain silent rather than to incriminate himself) and of his right to confer with counsel under the Sixth Amendment. He claims he was entitled to these rights as a putative defendant at the time of his testimony in a matter then under investigation and for which he was subsequently indicted in Cause Nos. J74–58(R) and J74–69(N). Defendant relies on decisions of the Fifth Circuit Court of Appeals in United States v. Mandujano, 496 F.2d 1050, and United States v. Rangel, 496 F.2d 1059. In both of these cases Chief Judge Spears of the Western District of Texas granted motions to suppress the grand jury testimony of witnesses, later indicted for perjury, as well as drug violations, when it was apparent that the witnesses were "putative" defendants to the drug charges at the time of their testimony, Judge Spears finding that each was entitled to full Miranda rights including the option of refusing to testify. His consolidated opinion is reported in 365 F.Supp. 155. The Appellate Court affirmed in each case, citations above, holding that where questioning of the defendants before the grand jury smacked of entrapment, and the questions posed presented a high likelihood that defendants' answers would furnish material for further action on the part of the government so that defendants were in a position of being "putative" or "virtual" defendants and may well have perceived themselves under an apparent compulsion to testify, a situation which fell within the ambit of custodial interrogation and deprived them of freedom of action in a significant way, full Miranda rights should have been given. In each case the defendant had been charged in one count with an attempt to distribute heroin, and in a second count for perjury based upon each defendant's denial before the grand jury of any attempt to sell heroin or solicitation to do so. In each case prior to the grand jury testimony

and the subsequent indictments, each defendant had been solicited by federal narcotic agents to sell heroin. The special prosecutor before the grand jury tracked the exact facts of the contacts between the defendants and the federal agents, and it was on the basis of defendants' answers during the grand jury investigation that they were indicted for perjury.

At the hearing on the motion sub judice, Mr. Joe Fail, Special Agent with the Intelligence Division of the Internal Revenue Service, testified to the events leading up to the series of indictments against Jarrett. The defendant offered as exhibits to Fail's testimony a transcript of the defendant's interrogation before the grand jury on February 1, 1973, and a transcript of Fail's testimony before a U. S. Magistrate following which the indictments in Criminal Actions No. J74–58(R) and No. J74–69(N) were rendered. The Court has familiarized itself with these documents as well as a transcript of Fail's evidence on the pending motion.

In substance, Fail stated that as senior agent, he, in August, 1970, was assigned to investigate Allied Equipment, Inc., in its sales of heavy equipment to county supervisors. He began his investigation in the spring of 1971 after seeing a referral report from the Audit Division of IRS indicating substantial payments of sales commissions paid by Allied on sales to supervisors as opposed to the commissions on sales made to private businesses, saying that this "supported the position of the Revenue Agent that there was possibly some money being paid out in order to enhance sales to Supervisors." He was able to relate invoices to certain salesmen after gaining access to the corporate records in May or June of 1971. At that time the Audit Division, having detected irregularities indicating a possible criminal violation of tax laws, had suspended its investigation and had referred the matter to the Intelligence Division for its determination. In the latter part of 1971, Fail stated he felt he had identified people who had been participants in a scheme to channel money to supervisors, admitting that one was Mr. Hugh Ellard, a codefendant in the conspiracy indictments. After Jarrett's testimony on February 1, 1973, Fail stated that he was requested by Department of Justice attorneys to develop and collaborate, as to Jarrett, "information that I had previously developed." This information consisted of two statements, one dated May 25, 1971, after Fail had talked to a former salesman of Allied Equipment, and another dated January 19, 1972, after Fail had talked to a county supervisor.

Although Fail did not complete his investigation of Allied Equipment for possible criminal violation of tax laws until May of 1973, he conceded that prior to the grand jury session in February, 1973, he had sufficient testimony to indicate in his judgment that there was a criminal violation and "that those two gentlemen (Ellard and Jarrett) were probably implicated in it." He further acknowledged that he did not obtain statements thereafter from other individuals as to Jarrett, but merely supplied what he had in affidavit form at the request of Department of Justice attorneys, and that he had furnished this information to one of these attorneys prior to Jarrett's being called as a grand jury witness on February 1, 1973, this attorney being present and assisting in the interrogation.

The government argues that the mere possibility that a witness called before a grand jury may later be indicted furnishes no basis for requiring that the witness be advised of his Fifth and Sixth Amendment rights, citing United States v. Orta, 5 Cir., 253 F.2d 312 and a more recent case, United States v. Glasco, 488 F.2d 1068. That is the law of those cases and of this Circuit. However, the facts, here, more closely resemble those in the *Mandujano* decision.

The government, through Mr. Fail's acknowledgments, had focused on Jar-

rett as one implicated in a corporate scheme to give kick-backs to county supervisors under the guise of sales commissions. The questions thereafter put to him before the grand jury were specific as to whether he had participated in any way in this scheme or had knowledge of it. An examination of his interrogation reveals that he was given no Miranda warnings—indeed he was threatened with a court order when he failed to speak up and, at the conclusion of his testimony, was told the maximum penalty he could receive for perjury. He was not given the choice of remaining silent. The proper remedy is the granting of the motion to suppress.

In a similar perjury action against another salesman of Allied Equipment, U. S. A. v. Hugh P. Ellard, Criminal No. 73S–3(C), Judge Cox of this District, granted a similar motion to suppress Ellard's testimony for similar reasons.

An appropriate order may be submitted within the time provided by the rules of this Court.