DIXON, Chief Justice.*
The defendant Lloyd B. Johnson, Sheriff of St. John the Baptist Parish, stands indicted by the grand jury of that parish for violation of the election code. R.S. 18:1461(A)(17).[1] The charge results from an investigation undertaken by the district attorney of the parish at the suggestion of the sheriff, who alleged in a letter published in the newspaper that certain offenses had been committed in the primary election for sheriff held October 27, 1979, and that an investigation should be launched. The three candidates were subpoenaed to appear at the district attorney’s office on November 12, 1979, and were asked what they knew of election irregularities. At the conclusion of his conversation with one of the assistant district attorneys, as they were about to depart, the sheriff stated that he had offered another candidate (Arthur Du-hon) money and a job in exchange for his endorsement in the second primary. Told that this might constitute a violation of the election code, he remarked, “That doesn’t matter, everybody does that.”
Three days later, the sheriff was brought before the grand jury and indicted. He then moved to have the inculpatory statement suppressed, on the ground that he had not been given Miranda warnings before he was questioned. After an evidentiary hearing, the trial judge granted the motion. The judge found that the sheriff’s statement was voluntary and spontaneous, and that the district attorney’s office had undertaken the investigation with no suspect in mind. However, in his opinion, the critical question was “whether or not the investigation, the interview, or whatever it might be, was custodial.” He concluded that because the assistant district attorney knew of facts which could be the basis for a charge before his conversation with the sheriff, it was incumbent upon him to advise the defendant of his rights.
The state now invokes the supervisory jurisdiction of this court and seeks to have the judge’s ruling reversed. The state admits that it did not advise the defendant of his rights prior to the November 12 interview, but it contends that a warning was not necessary because the interview did not constitute a custodial interrogation. Rather, the interview represented the first step in a general investigation aimed at obtaining information about the alleged election irregularities. The state says that the sheriff was subpoenaed with the other candidates because he might know of election irregularities, not because he was a suspect. It emphasizes that the defendant was not asked any incriminating questions, but offered his statement voluntarily and spontaneously at the conclusion of his conversation with the assistant district attorney.
The defendant argues that the interview constituted a custodial interrogation, be *1257 cause the subpoena compelled his attendance, and hence the Miranda warnings were required. He also claims that the warnings were called for because he was a suspect when he was questioned, candidate Duhon having alleged in his earlier interview that the defendant had offered him money and a job for his endorsement.[2]
Our examination of the record in this case leads us to conclude that the interview cannot be characterized as a custodial interrogation requiring Miranda warnings. We believe that the sheriff made his statement voluntarily in a noncoercive atmosphere, and we hold the statement is admissible.
The rules announced in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were established to protect the privilege against self-incrimination in the face of the compulsions the court found inherent in custodial interrogation, “questioning initiated by law enforcement officers after a person [was] taken into custody or otherwise deprived of his freedom of action in any significant way.” 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. The court realized that coercion could be mental as well as physical and noted that modern in-custody interrogation techniques tended in fact to be psychologically oriented. It was well aware that interrogation of an individual held incommunicado in an unfamiliar police dominated atmosphere tended to “subjugate the individual to the will of his examiner.” 384 U.S. at 457, 86 S.Ct. at 1619, 16 L.Ed.2d at 714. To combat the pressures which worked to undermine the individual’s will to resist and which tended to compel him to speak where he would not otherwise do so freely, the court established the Miranda safeguards, holding that any suspect in custody was to be advised of certain rights before he was questioned by the police. Any confession or admission obtained in the custodial interrogation of a suspect not apprised of his rights was not to be admissible in court.
However, the Miranda court restricted the application of the principles it announced to situations in which an individual was subjected to interrogation while in custody at a police station or otherwise deprived of his freedom of action in a significant way. 384 U.S. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725. Its decision was not intended to hamper police in their traditional investigatory functions. The court specified that its holding was not to affect general on-the-scene questioning or other general questioning of citizens in the fact finding process, because the compelling atmosphere inherent in the process of in-custody interrogation was not present in those situations. 384 U.S. at 477—478, 86 S.Ct. at 1629-1630, 16 L.Ed.2d at 725-726. The court noted that:
“... the compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery.” 384 U.S. at 461, 86 S.Ct. at 1621, 16 L.Ed.2d at 716.
In United States v. Mandujano, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), the court held that false statements made by a witness under oath to a grand jury need not be suppressed in a subsequent perjury prosecution because the prosecutor failed to give the witness Miranda warnings before he testified. The Court of Appeals had acknowledged that, as a general rule, a grand jury witness was not entitled to Miranda warnings, but concluded that the warnings were required when a witness was a virtual or putative defendant by virtue of the fact that the investigation had passed beyond the general inquiry stage and had focused on him. In the view of the Court of Appeals, the prosecutor’s treatment of the witness smacked of entrapment, since the prosecutor had specific information concerning the witness’ participa *1258 tion in an attempted sale of heroin, and knew that the witness could only respond to his questions by committing perjury or by incriminating himself, since he was not informed of his right to remain silent. The Court of Appeals concluded that elemental fairness required suppression of the perjured testimony. 496 F.2d 1050 (5th Cir. 1974). The Supreme Court held that the Court of Appeals had applied the Miranda standards erroneously. It stressed that the Miranda doctrine had been “aimed at the evils seen by the Court as endemic to police interrogation of a person in custody.” 425 U.S. at 579, 96 S.Ct. at 1778, 48 L.Ed.2d at 224. The court pointed out that the Miranda court did not regard judicial inquiries and custodial interrogation as equivalents. In its view, extending the Miranda principles to questioning before a grand jury constituted “an extravagant expansion never remotely contemplated by this Court in Miranda.” 425 U.S. at 580, 96 S.Ct. at 1778, 48 L.Ed.2d at 224.
In other decisions, the Supreme Court has stressed that it is the custodial nature of interrogation which triggers the need for the Miranda warnings. In Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), the petitioner argued that the Miranda doctrine should be extended to cover interrogation in noncustodial circumstances after a police investigation had focused on the suspect. The court disagreed, remarking that the petitioner’s argument ignored completely that Miranda was grounded squarely in the court’s explicit and detailed assessment of in-custody interrogation. 425 U.S. at 346, 96 S.Ct. at 1616, 48 L.Ed.2d at 7. The court regarded the issue presented in Miranda as a narrow one — the admissibility of statements obtained from individuals subjected to custodial police interrogation. The court concluded that the failure to give Miranda warnings did not render inadmissible statements made by the defendant to Internal Revenue Service agents during a noncustodial interview, even though the investigation may have focused on the defendant when he was interviewed in the sense that his tax liability was under scrutiny. Extension of the Miranda requirements, it thought, “would cut [the] Court’s holding in that case completely loose from its own explicitly stated rationale.” 425 U.S. at 345, 96 S.Ct. at 1615, 48 L.Ed.2d at 7.
This court has recognized that there are situations which fall short of a formal placing in arrest in which the accused may be said to be under significant restraint. Whether a defendant is so deprived of his freedom to act that he must be deemed under custodial restraint must be decided in a case by case basis. State v. Roach, 322 So.2d 222 (La.1975). In that case we delineated four factors which we would consider in assessing whether Miranda warnings were required: (1) the presence of probable cause to arrest the accused; (2) statements or actions by the police indicating an intention to hold or restrain him; (3) statements or actions by the accused indicating a reasonable belief that he is in custody; (4) the extent to which the investigation has focused on the accused.
In this case, the district attorney’s office had no probable cause to arrest the defendant prior to the interview with him. The district attorney had only an accusation made by another candidate interviewed earlier that same day.[3] The record is devoid of any statement or action indicating an intention to restrain the defendant; at the close *1259 of the interview he left without hindrance. There are no indications in the record that the defendant believed himself to be in custody. The investigation could hardly be characterized as having focused on the defendant; the fact finding process had just commenced and the accusation against the sheriff had just been made. All the candidates, not just the defendant, had been subpoenaed to give information.[4] The subpoena compelled the defendant to appear, under penalty of contempt, but the Mandu-jano holding suggests that a subpoenaed appearance is not considered sufficient restraint to require Miranda warnings. Furthermore, Mandujano and Beckwith suggest that even if the defendant was a suspect in the sense that his conduct had been called into question by another candidate’s accusation, this status alone would not trigger the need for Miranda warnings.
We conclude that the Miranda warnings were not required because the defendant was not questioned in circumstances constituting custodial interrogation. However, we recognize that law enforcement officials may on occasion compel involuntary confessions in noncustodial situations. Where such a claim is made, we must “examine the entire record and make an independent determination of the ultimate issue of voluntariness.” Davis v. North Carolina, 384 U.S. 737, 741-742, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895, 898 (1966). In the present case, there is no evidence that any coercion whatsoever was exerted on the defendant. He was not subjected to any coercive interrogation techniques. He was not asked a multitude of questions over a long period of time. He was not held incommunicado in a hostile atmosphere: he was interviewed in the office of one of the assistant district attorneys, in a casual manner, and in the company of his deputy, who remained in the room throughout the interview.
Nor was the defendant compelled to testify, much less incriminate himself. The assistant district attorneys testified that they deliberately refrained from asking the defendant any questions which might lead him to incriminate himself. The subpoena obtained by the district attorney could compel the defendant to appear, but it could not compel him to testify. In re Baer, 299 So.2d 804 (La.1974).
The record leads us to conclude that the defendant made his statement freely and spontaneously at the conclusion of his conversation with the assistant district attorney. “Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence.” 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.
For these reasons, the judgment of the district court sustaining the motion to suppress the inculpatory statement is reversed, and the motion to suppress is denied; the case is remanded to the district court for further proceedings.
LEMMON, J., dissents and assigns reasons.

 Judges Edmond L. Guidry, Jr., J. Burton Foret and P. J. Laborde, Jr. of the Third Circuit participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lem-mon.

. R.S. 18:1461 reads in pertinent part:
“A. No person shall knowingly, willfully, or intentionally:
(17) Give or offer to give, directly or indirectly, any money or thing of present or prospective value to any person who has withdrawn or who was eliminated prior or subsequent to the primary election as a candidate for public office, for the purpose of securing or giving his political support to any remaining candidates or to candidates for public office in the primary or general election.”

. Arthur Duhon also signed a written statement to this effect in the office of assistant district attorney John Crum. However, there is some confusion as to the date that statement was signed. The record says November 3, 1979, but the state claimed at oral argument before this court that the date was November 30, 1979.

. It is not clear from the record whether the assistant district attorney who interviewed the defendant even knew of the Duhon allegation at the time of the interview. Both assistant district attorneys testified at trial that one of them (Crum) had interviewed Duhon and the other (Almerico) interviewed the defendant. The confusion is compounded by the ambiguity regarding the date that Duhon signed the written statement admitting the defendant’s offer. If it was November 3, 1979, as the record indicates, then the officials may have been alerted to a possible violation by the defendant before the interview with him. If it was November 30, 1979, as the state contended at oral argument, then the first notice the state would have had of a possible impropriety on the part of the defendant would have been on the day of the interviews, November 12, 1979. The Manduja-no holding suggests that the date is ultimately immaterial to the determination of whether Miranda warnings were required.

. C.Cr.P. 66 authorizes the attorney general or district attorney to subpoena witnesses to appear for questioning concerning any offense under investigation by them. It was thought that the use of subpoenas enforceable by contempt proceedings would be helpful when witnesses ignored the “District Attorney’s Notice,” a printed form ordering attendance at the district attorney’s office, but enforceable only through threat of further action, such as a grand jury subpoena.
“Upon written motion of the attorney general or district attorney setting forth reasonable grounds therefor, the court may order the clerk to issue subpoenas directed to the persons named in the motion, ordering them to appear at a time and place designated in the order for questioning by the attorney general or district attorney respectively, concerning any offense under investigation by him. The court may also order the issuance of a subpoena duces tecum.
The contumacious failure or refusal of the person subpoenaed to appear is punishable as a contempt of court.
The attorney general or district attorney, respectively, may determine who shall be present during the examination and may order all persons excluded, except counsel for the person subpoenaed.” C.Cr.P. 66.